UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD R. WESTON,<br><br>       Plaintiff,<br><br>   v.<br><br>DOCUSIGN, INC., et al.,<br><br>       Defendants. | Case No. 22-cv-00824-WHO<br><br>**ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>Re: Dkt. Nos. 14, 20, 24 |

Before me are competing motions to appoint lead plaintiff and lead counsel in a putative securities class action. For the reasons that follow, co-movants Deka International S.A. Luxembourg ("DIL") and Public Employee Retirement System of Idaho ("PERSI") are appointed lead plaintiff and their choice of lead and liaison counsel approved.

## BACKGROUND[1]

This case stems from purportedly false and misleading statements made by executives of DocuSign, Inc. ("DocuSign"), a company that offers software that allows for the electronic generation, distribution, and signature of documents, as well as corresponding technical support, during the height of the COVID-19 pandemic when the company experienced accelerated growth. Compl. [Dkt. No. 1] ¶¶ s 2, 7. It trades on the NASDAQ under the ticker symbol "DOCU." *Id*.

According to the complaint, the defendants (DocuSign and three former and current DocuSign executives) misrepresented and/or failed to disclose that this growth was attributable to COVID-related restrictions rather than a sustainable shift in demand for DocuSign's services, and

---

[1] Given the procedural posture of the case, I will only recite the allegations needed to understand the motions at hand.

1  that the demand for DocuSign's services waned as those restrictions were lifted. *Id.* The
2  complaint alleges that the putative class members suffered significant damages as a result, as
3  shown by the 42% decline in stock price (from $233.82 to $135.09 per share) on December 3,
4  2021, after DocuSign revealed the pandemic's true impact on its business. *See id.* at ¶¶ 8, 45-51.

On December 22, 2021, Brian Collins filed a securities class action against the defendants in the Eastern District of New York, asserting claims on behalf of investors who purchased DocuSign securities between March 27, 2020 and December 2, 2021. *See Collins v. DocuSign, Inc.*, No. 22-CV-00851-CRB (N.D. Cal. filed Dec. 22, 2021).[2] The same day, Collins posted a notice on *Business Wire* announcing the action as required by the Private Securities Litigation Reform Act of 1955 ("PSLRA") *see* Dkt. No. 14, Ex. D; *see also* 15 U.S.C. § 78u-4(a)(3)(A). The notice listed February 22, 2022, as the deadline to seek appointment as lead plaintiff. *See* Dkt. No. 14, Ex. D.

On February 8, 2022, Richard Weston filed this case in this district, asserting the same claims as in the *Collins* action, with a narrower class period: June 4, 2020 to December 2, 2021. *See* Dkt. No. 1. His counsel also issued a notice on *Business Wire* alerting investors to this class period and reiterating the February 22, 2022, deadline to seek appointment as lead plaintiff. *See* Dkt. No. 14, Ex. E.

Three movants filed motions to be appointed lead plaintiff and counsel on February 22, 2022. *See* Dkt. Nos. 14, 20, 24. After reviewing the competing motions, movant Dennis Richerson filed a statement of non-opposition to others being appointed lead plaintiff. *See* Dkt. No. 29. Two competing movants remain: DIL and PERSI, and Steven Truong.

**LEGAL STANDARD**

**I.    APPOINTMENT OF LEAD PLAINTIFF**

The PSLRA governs securities class actions. *See* 15 U.S.C. § 78u-4. Under the PSLRA, courts shall "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class

---

[2] The *Collins* action was transferred to this district on February 10, 2022, and voluntarily dismissed on February 14. *See* Dkt. Nos. 9, 16 of *Collins*, No. 22-CV-00851-CRB.

members"—the "most adequate plaintiff." *Id*. § 78u-4(a)(3)(B)(i).  The PSLRA provides a rebuttable presumption that the most adequate plaintiff is the "person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id*. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted "only upon proof" by a member of the purported class "that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

*Id*. § 78u-4(a)(3)(B)(iii)(II).

The Ninth Circuit has made clear that the district court may not "engage in a wide-ranging comparison to determine which plaintiff is best suited to represent the class." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  Instead, "the lead plaintiff . . . is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *Id*. The district court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Id*. at 730.  "It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id*. (emphasis in original).

## II. APPOINTMENT OF LEAD COUNSEL

The PSLRA also provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "While the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff." *In re Cavanaugh*, 306 F.3d at 734.  So long as the lead plaintiff makes a "reasonable choice of counsel, the district court

3

should generally defer to that choice." *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009).

## DISCUSSION

### I.  APPOINTMENT OF LEAD PLAINTIFF

#### A. Motions for Appointment

Both of the remaining movants—DIL and PERSI, and Truong—timely filed their motions for appointment. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). The first step is satisfied by both.

#### B. Financial Interest

The next step is determining which of the two remaining movants has the largest "financial interest" in the action. *Cavanaugh*, 306 F.3d at 730. The Ninth Circuit has not yet held how this should be calculated, stating instead that "the court may select accounting methods that are both rational and consistently applied." *See id.* at 730 n.4.

"In assessing which class member has the 'largest financial interest' courts typically consider the *Lax-Olsten* factors, which include: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Nutanix, Inc. Sec. Litig.*, No. 19-CV-01651-WHO, 2021 WL 783579, at *2 (N.D. Cal. March 1, 2021) (internal quotation marks and citation omitted). But not all factors are considered equally. "The weight of authority puts the most emphasis on the competing movants' estimated losses, using a 'last in, first out' ('LIFO') methodology." *Bodri v. Gopro, Inc.*, No. 16-CV-00232-JST, 2016 WL 1718217, at *3 (N.D. Cal. April 28, 2016) (internal alterations and citations omitted). Most courts within this district use the LIFO method to calculate estimated losses. *See Scheller v. Nutanix, Inc.*, No. 19-CV-01651-WHO, 2021 WL 2410832, at *4 (N.D. Cal. June 10, 2021) (collecting cases). Mindful of the Ninth Circuit's desire for consistent application, I will do the same.

DIL and PERSI claim net losses of approximately $45,518,474, far greater than the approximately $1,224,144 claimed by Truong. *See* DIL & PERSI Mot. [Dkt. No. 14] 7:25-27; Truong Mot. [Dkt. No. 20] 6:1-2. Neither party challenges the other's calculations or the

4

1  methodology used.

2  Only DIL and PERSI expressly provide additional information, stating that they purchased 758,684 total shares, 446,529 net shares, and made approximately $105,229,664 in net expenditures during the class period. *See* DIL & PERSI Oppo. [Dkt. No. 27] 4:24-26. A review of Truong's loss chart indicates that his numbers are lower (for example, that he purchased 14,397 shares). *See* Rosen Decl. [Dkt. No. 21] Ex. 3. Accordingly, DIL and PERSI have the greatest financial interest in the outcome of this case.

**C. Typicality and Adequacy**

Given their financial interest, the question becomes whether DIL and PERSI satisfy Rule 23(a)'s requirements, particularly typicality and adequacy.

"The named plaintiff's representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 969-70 (9th Cir. 2019) (internal quotation marks and citations omitted). To determine adequacy, the court asks two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

A recent Ninth Circuit decision clarified how district courts should consider typicality and adequacy in appointing a lead plaintiff under the PSLRA. *See In re Mersho*, 6 F.4th 891, 899-900 (9th Cir. 2021). After the court determines which movant has the largest alleged losses, it then determines "whether that movant has made a prima facie showing of adequacy and typicality." *Id*. at 899. "At this step, the process is not adversarial, so the Rule 23 determination should be based on only the movant's pleadings and declarations." *Id*. It is later when the process turns adversarial, and a member of the purported class must show proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *See id*.

Accordingly, all DIL and PERSI must do at this stage is to show, based on their pleadings and declarations, that their claims are typical of the proposed class and that they would adequately

5

1   represent it. DIL and PERSI have done this. DIL and PERSI, like other class members,

2   purchased DocuSign securities during the class period. *See* DIL & PERSI Mot., Joost Decl., Ex.

3   B. They also allege that they purchased that stock at prices inflated by DocuSign's materially

4   false and misleading statements and/or omissions and were damaged as a result. *See id*. at 8:21-

5   23; *see* Compl. at ¶ 13. In order words, their claims are typical of the class.

6         DIL and PERSI have also shown that they will adequately represent the class. There is no

7   suggestion of any conflict of interest with other class members. The amount of DIL and PERSI's

8   alleged losses and their selection as lead counsel of a firm with experience in prosecuting

9   securities class actions suggest that they will prosecute the action vigorously on behalf of the

10  class. *See* DIL & PERSI Mot. at 9-11. So does their experience as institutional investors and as

11  co-lead plaintiffs in PSLRA class action litigation. *See* Joost Decl., Ex. C at ¶¶ 3-5, 9. Although

12  DIL and PERSI do not contend that they had a relationship prior to this litigation, their prior

13  participation in securities class actions as co-lead plaintiffs with other institutional investors

14  indicates that they understand the procedures and practices that will allow them to work together

15  effectively to prosecute this case. *See id*. The parties state that they have discussed "the

16  importance of joint decision-making, open communication and the ability to confer, with or

17  without counsel . . . on short notice to ensure that we are able to make timely decisions." *See id*. at

18  ¶ 14. And the group's small size—two entities—supports the parties' belief that they will be able

19  to work together to adequately represent the class.

20        DIL and PERSI have the greatest financial interest in the outcome of this case and have

21  made a prima facie showing of adequacy and typicality. They are the presumptively most

22  adequate plaintiff.

23        Now the process becomes adversarial. *See In re Mersho*, 6 F.4th at 899. This presumption

24  may be rebutted "only upon proof by a member of the purported plaintiff class" that DIL and

25  PERSI "will not fairly and adequately protect the interests of the class; or is subject to unique

26  defenses that render such plaintiff incapable of adequately representing the class." *See id*. (citing

27  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). Proof is key—the presumption may not "be set aside for any

28  reason that the court may deem sufficient." *See id*. "Competing movants must convince the

1  district court that the presumptive lead plaintiff would not be adequate, not merely that the district
2  court was wrong in determining that the prima facie elements of adequacy were met." *Id*. at 901.

3 Truong argues that DIL and PERSI are atypical and inadequate in three ways. Truong
4  Oppo. [Dkt. No. 28] 3-7. First, he contends that they are a lawyer-made group without a pre-
5  existing relationship and thus, improper. *Id*. at 3:9-5:2.

6 The concern with a lack of a pre-litigation relationship is that it "may indicate that
7  members may not work together well to vigorously prosecute the litigation or they might not be
8  able to control counsel." *In re Mersho*, 6 F.4th at 901. I took this into account when assessing
9  whether DIL and PERSI made a prima facie showing of adequacy, specifically considering the
10  small group size and their prior experience as co-lead plaintiffs. At this point in the inquiry,
11  Truong must offer *proof* that the lack of a pre-existing relationship renders DIL and PERSI
12  inadequate plaintiffs. Instead, he has only declared their statements insufficient "boilerplate
13  assertions." *See* Truong Oppo. at 4:7-8. This does not suffice.

14 Truong next contends that DIL is subject to unique defenses because it lacks standing to
15  sue. *Id*. at 5:4-15. He notes that DIL is the investment manager for the funds rather than the
16  actual owner of the DocuSign securities at issue and did not file any assignments of claims with its
17  motion. *See id*.

18 Truong relies on *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100
19  (2d Cir. 2008). *See id*. at 5:4-15. In *Huff*, the Second Circuit held that an investment advisor did
20  not have standing to sue on behalf of its clients' funds because it did not have legal ownership and
21  title of its clients' claims, and thus did not suffer an injury. *See* 549 F.3d at 109, 111. The court
22  recognized a prudential exception to the injury requirement, stating that a plaintiff could assert
23  third-party standing upon showing "(1) a close relationship to the injured party and (2) a barrier to
24  the injured party's ability to assert its own interests." *See id*. at 109. But the court held that the
25  plaintiff did not meet this exception because the investment advisor-client relationship was "not
26  the type of close relationships" that courts had recognized and because the plaintiff had not shown
27  any hindrance to the owners' ability to protect their own interests. *See id*. at 110.

28 Courts routinely recognize the exception articulated in *Huff* when faced with facts similar

to these. In *In re Vivendi Universal, S.A. Secs. Litig.*, 605 F. Supp. 2d. 570, 579-80 (S.D.N.Y. 2009), the court held that Luxembourg management companies had standing to sue because their relationship to the funds was akin to that of a trustee to beneficiary, and because the funds did not have legal personality and thus could not bring suit on their own. The court also noted that "[t]he management companies have exclusive rights to manage the funds and bring legal actions against third parties." *In re Vivendi*, 605 F. Supp. 2d at 579. Another court came to a similar conclusion in *City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*, No. 13-CV-03325, 2014 WL 4799659, at *5 (D. Col. Sept. 26, 2014), holding that the lead plaintiff had standing under *Huff* because it held "trustee-like powers over the funds property and the funds are prohibited under Swedish and Luxembourg law from bringing the claims herein in their own right."

The same is true here. DIL "manages mutual and special funds formed under the laws of Luxembourg, and has the exclusive statutory right and obligation, pursuant to the laws of Luxembourg, to bring legal claims, in its own name, to recover losses incurred by the funds." *See* DIL & PERSI Mot., Joost Decl., Ex. C at ¶ 2. The parties further state that "[t]hese funds have no legal authority under Luxembourgian law to pursue such claims on their own." *Id*. As such, the parties argue, DIL "requires no assignments of claims from the funds that they manage." *Id*.

This is enough to satisfy the exception in *Huff*. There is a sufficiently close relationship between DIL and the funds at issue, as indicated by the statement that DIL manages the funds and has the exclusive right and obligation to bring claims on their behalf. Moreover, like the funds in *In re Vivendi* and *City of Taylor*, the funds are apparently barred from bringing claims on their own behalf under Luxembourg law.

Truong makes much of the fact that DIL and PERSI did not produce any assignments of claims. *See* Truong Oppo. at 5:13-6:6. But it is not clear whether DIL and PERSI must do so, given the assertion of Luxembourg law. At best, Truong speculates that DIL and PERSI will be subject to a unique defense. Given *Huff*'s application in similar circumstances, as well as other cases where post-complaint assignments of litigation rights have been found valid (assuming DIL in fact needs those assignments), it is not certain DIL will face a challenge to standing. *See, e.g.*, *Markette v. XOMA Corp.*, No. 15-CV-03425-HSG, 2016 WL 2902286, at *4 (N.D. Cal. May 13,

8

2016) (collecting cases where post-complaint assignments were permitted). Truong has not proffered sufficient proof to overcome the presumption that DIL and PERSI are subject to this unique defense.[3]

Finally, Truong contends that four of the six DIL funds are "in-and-out traders," again subjecting them to unique defenses. Truong Oppo. at 6:8-12. Of those four, Truong further argues, two recorded gains on their DocuSign trades, rendering DIL atypical of a class seeking damages for purported losses. *Id*. at 6:20-21.

This again is not proof of atypicality. First, Truong offers no case law or other rationale for examining each of DIL's six funds individually. *See* Truong Oppo. at 6-7. Second, DIL accounted for any gains in its overall calculation of net losses. Third, even if the losses from the two funds were excluded as unrecoverable, they constitute a relatively small percentage of DIL's alleged losses. *See* DIL & PERSI Reply [Dkt. No. 31] 9:14-17. DIL would still have suffered an approximately $29,393,866 in losses. *See id*. Again, Truong only speculates that DIL would be subject to this defense and has not overcome the presumption that DIL and PERSI are adequate lead plaintiffs.

For these reasons, DIL and PERSI's motion to be appointed lead plaintiff is GRANTED.

## II.  APPOINTMENT OF LEAD COUNSEL

DIL and PERSI have selected Labaton Sucharow as lead counsel and Kessler Topaz as liaison counsel. *See* DIL & PERSI Mot. at 12:17-13:11. Those choices are entitled to substantial deference. *Cohen*, 586 F.3d at 732. Labaton Sucharow has extensive experience as counsel in securities class actions, as does Kessler Topaz. *See id*., Joost Decl., Exs. F, G. Given the deference awarded to the lead plaintiffs under the PSLRA and the firms' extensive experience, I see no reason to deny DIL and PERSI's request. Their selections are approved.

---

[3] Truong does not challenge PERSI's standing. *See* Truong Oppo. at 5-6. Even if it were later determined that DIL in fact lacked standing, PERSI may still proceed as lead plaintiff. PERSI claims approximately $15,960,030 in losses— far more than Truong. *See* DIL & PERSI Mot., Joost Decl., Ex. B. The other requirements would also be satisfied. And the case law does not expressly foreclose the possibility that DIL could be severed. *See, e.g., In re Surebeam Corp. Secs. Litig*., No. 3-CV-1721, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) ("[C]ourts in this circuit routinely break apart a proposed group in search of the most adequate plaintiff.").

**CONCLUSION**

For the reasons stated above, DIL and PERSI are APPOINTED lead plaintiff under the PSLRA. Their selection of Labaton Sucharow as lead counsel and Kessler Topaz as liaison counsel is APPROVED.

**IT IS SO ORDERED.**

Dated: April 18, 2022

William H. Orrick
United States District Judge