1  **KESSLER TOPAZ MELTZER**       **LABATON KELLER SUCHAROW LLP**
   **& CHECK, LLP**       Carol C. Villegas (admitted *pro hac vice*)
2  Jennifer L. Joost (Bar No. 296164)     Irina Vasilchenko (admitted *pro hac vice*)
   Stacey M. Kaplan (Bar No. 241989)    Lisa Strejlau (admitted *pro hac vice*)
3  One Sansome Street, Suite 1850      Matthew J. Grier (admitted *pro hac vice*)
   San Francisco, CA 94104         David Saldamando (admitted *pro hac vice*)
4  Tel: (415) 400-3000              140 Broadway
   Fax: (415) 400-3001             New York, NY 10005
5  jjoost@ktmc.com                Tel: (212) 907-0700
   skaplan@ktmc.com            Fax: (212) 818-0477
6                             cvillegas@labaton.com
   *Liaison Counsel for the Proposed Class*   ivasilchenko@labaton.com
7                             lstrejlau@labaton.com
                              mgrier@labaton.com
8                             dsaldamando@labaton.com
9  *[Additional counsel on signature page]*
                              *Counsel for Lead Plaintiffs*
10                            *and Lead Counsel for the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RICHARD R. WESTON, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 3:22-cv-00824-WHO |
| Plaintiff, | **LEAD PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO CERTIFY CLASS, APPOINT CLASS REPRESENTATIVES, AND APPOINT CLASS COUNSEL** |
| v. | |
| DOCUSIGN, INC., DANIEL D. SPRINGER, MICHAEL J. SHERIDAN, CYNTHIA GAYLOR, and LOREN ALHADEFF, | DATE: May 15, 2024 TIME: 2:00 p.m. COURTROOM: 2, 17th Floor JUDGE: Hon. William H. Orrick |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

GLOSSARY OF DEFINED TERMS ...................................................................................vi

I.      PRELIMINARY STATEMENT .................................................................................1

II.     DEFENDANTS' *COMCAST* DAMAGES METHODOLOGY ARGUMENTS FAIL ..........1

        A.      Any *Comcast* Requirements Are Easily Satisfied Here.................................1

        B.      Plaintiffs' Alternative MOTR Theory Does Not Preclude Certification ....................3

        C.      Defendants' Other Speculative *Comcast* Challenges Are Similarly Premature ..........5

III.    PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(A) ...................................7

        A.      Plaintiffs Have Established Typicality........................................................7

                1.      Plaintiffs Are Not Subject to the Unique Defense of Non-Reliance...............8

                2.      Plaintiffs' Post-Disclosure Purchases Do Not Make Them Atypical ...........10

                3.      DIL Is Not Subject to Any Other Unique Defenses....................................11

        B.      Plaintiffs Are Adequate Class Representatives............................................12

IV.     CERTIFICATION OF THE ENTIRE CLASS PERIOD IS APPROPRIATE ....................14

V.      CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acuity Brands, Inc. Sec. Litig.*,
  2020 WL 5088092 (N.D. Ga. Aug. 25, 2020) ........................................................... 6

*In re Apple Inc. Sec. Litig.*,
  2022 WL 354785 (N.D. Cal. Feb. 4, 2022) .......................................................... 2, 7

*Baker v. SeaWorld Ent., Inc.*,
  2017 WL 5885542 (S.D. Cal. Nov. 29, 2017) ......................................................... 3

*In re Barrick Gold Sec. Litig.*,
  314 F.R.D. 91 (S.D.N.Y. 2016) ......................................................................... 5, 15

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) ................................................................................... 7

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
  2023 WL 2932485 (D. Conn. Apr. 13, 2023) .............................................. 9, 10, 11

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
  2022 WL 2954937 (N.D. Cal. July 26, 2022) ....................................................... 13

*In re BP p.l.c. Sec. Litig.*,
  2014 WL 2112823 (S.D. Tex. May 20, 2014) ........................................................ 4

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,
  2024 WL 1060079 (S.D. Cal. Mar. 11, 2024) ................................................ 2, 4, 7

*City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*,
  2018 WL 4931543 (N.D. Cal. Oct. 11, 2018) ...................................................... 2, 3

*City of Sunrise Firefighters' Pension Fund v. Oracle*,
  2022 WL 1459567 (N.D. Cal. May 9, 2022) ....................................................... 3, 6

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ......................................................................................... *passim*

*In re Connetics Corp. Sec. Litig.*,
  257 F.R.D. 572 (N.D. Cal. 2009) ........................................................... 8, 10, 11

*Cosby v. KPMG, LLP*,
  2020 WL 3548379 (E.D. Tenn. June 29, 2020) ...................................................... 5

*In re Countrywide Fin. Corp. Sec. Litig.*,
  273 F.R.D. 586 (C.D. Cal. 2009) ................................................................. 10, 11

ii

*In re Diamond Foods, Inc., Sec. Litig.*,
   295 F.R.D. 240 (N.D. Cal. 2013) ................................................................................ 8

*Erica P. John Fund, Inc. v Halliburton Co.*,
   563 U.S. 804 (2011) ....................................................................................................... 6

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*,
   247 F.R.D. 32 (D.D.C. 2008) ...................................................................................... 14

*In re Fibrogen Sec. Litig.*,
   2024 WL 1064665 (N.D. Cal. Mar. 11, 2024) ............................................................ 4

*Gebremedhin v. Am. Fam. Mut. Ins. Co.*,
   2015 WL 4272716 (D. Colo. July 15, 2015) .............................................................. 12

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
   594 U.S. 113 (2021) ..................................................................................................... 14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) ....................................................................................................... 1

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ........................................................................................ 8

*Hardy v. MabVax Therapeutics Holdings*,
   2018 WL 4252345 (S.D. Cal. Sept. 6, 2018) ............................................................. 15

*Hatamian v. Advanced Micro Devices, Inc.*,
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ............................................................ 1

*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 WL 7406418 (N.D. Cal. Dec. 22, 2016) ........................................................... 14

*Hunt v. Bloom Energy Corp.*,
   2021 WL 1110260 (N.D. Cal. Mar. 23, 2021) .......................................................... 13

*In re IMAX Sec. Litig.*,
   272 F.R.D. 138 (S.D.N.Y. 2010) ............................................................................... 14

*Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*,
   2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023) .......................................................... 4

*In re Intuitive Surgical Sec. Litig.*,
   2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) ...................................................... 8, 9, 12

*Junge v. Geron Corp.*,
   2022 WL 1002446 (N.D. Cal. Apr. 2, 2022) ........................................................ 4, 5, 6, 7

*In re Juniper Networks, Inc. Sec. Litig.*,
   264 F.R.D. 584 (N.D. Cal. 2009) ................................................................................ 15

iii

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009) ................................................................ 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018) ....................................................... 12

*Loritz v. Exide Techs.*,
    2015 WL 6790247 (C.D. Cal. July 21, 2015) ............................................. 6

*Ludlow v. BP, p.l.c.*,
    800 F.3d 674 (5th Cir. 2015) ...................................................................... 4

*Luna v. Marvell Tech. Grp., Ltd.*,
    2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) ...................................... 2, 15

*Malriat v. QuantumScape Corp.*,
    2022 WL 17974629 (N.D. Cal. Dec. 19, 2022) .............................. 1, 7, 13

*In re Mills Corp. Sec. Lit.*,
    257 F.R.D. 101 (E.D. Va. 2009) ............................................................... 15

*Mulderrig v. Amyris, Inc.*,
    340 F.R.D. 575 (N.D. Cal. 2021) ........................................................... 3, 8

*Pirnik v. Fiat Chrysler Autos., N.V.*,
    327 F.R.D. 38 (S.D.N.Y. 2018) .................................................................. 6

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
    2021 WL 229310 (N.D. Cal. Jan. 21, 2021) ............................................. 6

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    2022 WL 3357835 (N.D. Cal. Aug. 15, 2022) .......................................... 2

*In re SandRidge Energy, Inc. Sec. Litig.*,
    2019 WL 4752268 (W.D. Okla. Sept. 30, 2019) .................................... 15

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    335 F.R.D. 276 (N.D. Cal. 2020) .................................................. 6, 10, 11

*Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*,
    2023 WL 3569981 (N.D. Cal. May 19, 2023) ............................... 4, 5, 6, 7

*In re Silver Wheaton Corp. Sec. Litig.*,
    2017 WL 2039171 (C.D. Cal. May 11, 2017) ........................................... 7

*In re SunEdison, Inc. Sec. Litig.*,
    329 F.R.D. 124 (S.D.N.Y. 2019) ............................................................. 15

*Turocy v. El Pollo Loco Holdings, Inc.*,
    2018 WL 3343493 (C.D. Cal. July 3, 2018) ........................................... 12

iv

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ................................................................... 15

*In re Vivendi Universal, S.A. Sec. Litig.*,
    605 F. Supp. 2d. 570 (S.D.N.Y. 2009) ...................................................... 11, 12

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
    325 F.R.D. 280 & 295 (D. Minn. 2018)...................................................... 14

*In re Winstar Commc'ns Sec. Litig.*,
    290 F.R.D. 437 (S.D.N.Y. 2013) ................................................................... 12

**Statutes & Rules**

Federal Rules of Civil Procedure Rule 23 ......................................................... 7

Securities Exchange Act of 1934 Section 10(b) ........................................... 2, 15

Private Securities Litigation Reform Act ("PSLRA") .................................... 13

# GLOSSARY OF DEFINED TERMS[1]

| | |
|---|---|
| AC | The Amended Class Action Complaint, ECF No. 59, filed on July 8, 2022. Citations to "¶__" refer to paragraphs in the AC. |
| Alhadeff | Defendant Loren Alhadeff, DocuSign's former CRO |
| CEO | Chief Executive Officer |
| CFO | Chief Financial Officer |
| CRO | Chief Revenue Officer |
| Class Period | June 4, 2020 through June 9, 2022, inclusive |
| Company or DocuSign | Defendant DocuSign Inc. |
| COR | Chad Coffman's Opening Report, ECF No. 111-2 |
| CRR | Chad Coffman's Reply Report, attached as PX A |
| CW(s) | Confidential Witness(es)—former employee of DocuSign who agreed to speak with Plaintiffs' counsel on the condition of anonymity. CWs are referred to in the feminine to preserve their anonymity. |
| Defendants | Collectively, DocuSign, Springer, Sheridan, Gaylor, and Alhadeff |
| Deka | Deka Investments GmbH, DIL affiliate that performs investment management and litigation-related services on behalf of DIL |
| DIL | Deka International S.A. Luxembourg |
| DIL Funds | Deka-GlobalSelect, Deka-Industrie 4.0, Deka-Künstliche Intelligenz, DekaLux-USA, Deka-Nachhaltigkeit Aktien, and Deka-Nachhaltigkeit Impact Aktien |
| DX | Defendants' Exhibits (ECF Nos. 129-1 to 129-16, respectively) attached to the Declaration of Jennifer C. Bretan, ECF No. 129-1 |
| Exchange Act | The Securities Exchange Act of 1934, Pub. L. 73–291, 48 Stat. 881, 15 U.S.C. § 78a et seq. |
| Gaylor | Defendant Cynthia Gaylor, DocuSign's former CFO |

---

[1] Unless otherwise stated, all emphasis is added and internal brackets, citations, and quotations are omitted.

| GRR | Steven Grenadier's Rebuttal Report, ECF No. 129-2 |
|---|---|
| Individual Defendants | Collectively, Defendants Springer, Sheridan, Gaylor, and Alhadeff |
| IM(s) | Investment Manager(s) |
| Mellon | Mellon Investments Corporation, PERSI's passive index investment manager that invested in DocuSign common stock on PERSI's behalf during the Class Period |
| Motion or Mot. | Plaintiffs' Memorandum of Points and Authorities in Support of Motion to Certify the Class, Appoint Class Representatives, and Appoint Class Counsel, ECF No. 111 |
| MOTR | Materialization of the risk |
| MTD | Defendants' Motion to Dismiss, ECF No. 68 |
| MTD Order | Order Denying Motion to Dismiss, ECF No. 88 |
| OOP | The "out-of-pocket" damages methodology (under which damages are equal to inflation at the time of purchase less inflation at the time of sale) |
| Opp. | Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification, ECF No. 129 |
| Peregrine | Peregrine Capital Management, LLC, PERSI's active investment manager that invested in DocuSign common stock on PERSI's behalf during the Class Period. |
| PERSI | Public Employee Retirement System of Idaho |
| Plaintiffs | Collectively, Lead Plaintiffs DIL and PERSI |
| PM(s) | Portfolio Manager(s) |
| PSLRA | Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 |
| PX | Plaintiffs' Exhibits attached to the Declaration of Irina Vasilchenko, filed concurrently herewith |
| Rule 9(b) | Rule 9(b) of the Federal Rules of Civil Procedure |
| Rule 10b-5 | SEC Rule 10b-5 promulgated under Section 10(b) of the Exchange Act |
| SEC | United States Securities and Exchange Commission |

| Section 10(b) or §10(b) | Section 10(b) of the Exchange Act |
|---|---|
| Section 20(a) or §20(a) | Section 20(a) of the Exchange Act |
| Sheridan | Defendant Michael J. Sheridan, DocuSign's former CFO |
| Springer | Defendant Daniel D. Springer, DocuSign's former CEO |

## I.    PRELIMINARY STATEMENT

Defendants do not dispute that DocuSign stock traded in an efficient market during the Class Period, such that Plaintiffs may invoke the *Basic* presumption of reliance. Defendants also do not try to rebut the *Basic* presumption by challenging price impact under *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014). Instead, Defendants only challenge whether Plaintiffs have set forth a class-wide approach to measuring damages consistent with their liability theory (relying on *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)). But, as courts routinely hold when certifying such securities class actions, Plaintiffs' proposed method for measuring OOP damages using an event study and common, class-wide evidence, easily satisfies *Comcast*. Defendants' *Comcast* challenges are merely poorly-disguised and improper loss causation arguments, as this Court has previously held. *Malriat v. QuantumScape Corp.*, 2022 WL 17974629, at *15 (N.D. Cal. Dec. 19, 2022) (Orrick, J.) (securities fraud plaintiffs "do not need to prove loss causation at the class certification stage") (citing *Erica P. John Fund, Inc. v Halliburton Co.* ("*Halliburton I*"), 563 U.S. 804, 812-13 (2011)). Defendants also mischaracterize the AC's claims as premised on a MOTR liability theory to shoehorn this case into a few outlier decisions. But courts in this District (and elsewhere) have rejected this exact argument.

Faced with this reality, Defendants desperately launch various typicality and adequacy attacks—based on mischaracterizations of the record—also repeatedly rejected by courts, including this one. Defendants' attempt to shorten the Class Period also fails, as this is generally a merits issue that cannot be decided at this stage, and this Court already rejected these exact arguments at the MTD.

## II.    DEFENDANTS' *COMCAST* DAMAGES METHODOLOGY ARGUMENTS FAIL

### A.    Any *Comcast* Requirements Are Easily Satisfied Here

Under *Comcast*, Plaintiffs need only show that "damages are **capable** of being established on a class wide basis." *Malriat*, 2022 WL 17974629, at *15. "The Ninth Circuit reads *Comcast* to demand only that plaintiffs be able to show that their damages stemmed from the defendants' actions that created the legal liability." *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *8 (N.D. Cal. Mar. 16, 2016). *Comcast* was an antitrust case where the proposed damages model was based on four distinct theories of antitrust injury—three of which were previously dismissed. 569 U.S. at 37-38. Thus, courts have held that *Comcast*'s unique facts generally render it of limited impact

1  in §10(b) cases, where typically the "damages model relies on but one theory of liability," predicated

2  on stock price inflation due to misstatements. *Luna v. Marvell Tech. Grp., Ltd.*, 2017 WL 4865559,

3  at *6 (N.D. Cal. Oct. 27, 2017); *see also In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at *12 (N.D.

4  Cal. Feb. 4, 2022) (same—"[a]t the class certification, plaintiff is not required to do more").

5  The same is true here. Plaintiffs' expert, Coffman, has opined that damages can be calculated

6  based on the OOP method, which is consistent with Plaintiffs' liability theory and applicable to all

7  Class members. COR ¶¶7, 82-83. He explained a step-by-step approach to calculate OOP damages at

8  the appropriate stage using an event study that employs Class-wide information to measure the daily

9  artificial inflation in DocuSign's stock price during the Class Period for all Class members. *Id.* ¶85.

10  This OOP event study method is nearly universally-accepted for calculating damages in §10(b) cases.

11  *City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2018 WL 4931543, at *3 (N.D.

12  Cal. Oct. 11, 2018) ("Courts regularly reaffirm that the [OOP], or event study, method matches

13  plaintiffs' theory of liability under [§10(b)] . . . making it **the standard** method for calculating

14  damages **in virtually every** [§10(b)] class action."). Defendants' expert agreed that the OOP method

15  "is commonly used" in §10(b) cases and "in general, . . . can apply on a class-wide basis." PX B at

16  166-68, 300; *see* CRR ¶9. Further, here, "unlike in *Comcast*, Plaintiffs have a single theory of liability:

17  Defendants' material misrepresentations and omissions caused Class members to purchase

18  [DocuSign] shares at an artificially inflated price which subsequently declined after the truth

19  emerged." *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 2024 WL 1060079, at *15

20  (S.D. Cal. Mar. 11, 2024); *see* AC ¶¶325-32; COR ¶¶82-83. Thus, the OOP method is "consistent"

21  with the liability theory here. *Acadia*, 2024 WL 1060079, at *15. Indeed, such *Comcast* attacks have

22  been rejected in **at least 90** §10(b) cases, with courts finding the OOP method sufficient. PX D.

23  Defendants' claim that Plaintiffs have not explained "how the [OOP] method [is] applied to

24  specific facts" here (Opp. 10) is not only inaccurate (*e.g.*, COR ¶¶10-16, 85; PX E at 59-70), but has

25  also been rejected. *RH*, 2018 WL 4931543, at *3. That Coffman's damages method description in the

26  COR is a "nearly verbatim copy" of his reports in prior §10b cases is irrelevant. *Purple Mountain Tr.*

27  *v. Wells Fargo & Co.*, 2022 WL 3357835, at *5 (N.D. Cal. Aug. 15, 2022). It "reflect[s] the fact that

28  **securities fraud cases fit Rule 23 'like a glove**,'" rather than suggest[s] that class treatment is

2

1    inappropriate." *RH*, 2018 WL 4931543, at *3; PX E at 69-71. Defendants' insistence for "details . . .

2    pertain to loss causation issues that courts generally do not consider at [] class certification []." *City

3    of Sunrise Firefighters' Pension Fund v. Oracle*, 2022 WL 1459567, at *9 (N.D. Cal. May 9, 2022).

### B.    Plaintiffs' Alternative MOTR Theory Does Not Preclude Certification

5    Defendants next seize on a couple of outlier cases to try to manufacture a *Comcast* problem

6    by mischaracterizing the AC as premised on a MOTR liability theory, which Plaintiffs purportedly

7    fail to account for in their damages method. Opp. 11-15. This argument fails on the facts and the law.

8    First, Defendants' assertion that Plaintiffs proceed "***in whole*** (or in ***substantial*** part)" under a

9    MOTR theory of ***liability*** (Opp. 13) is untrue. The AC pleads both the corrective disclosure "***and/or***"

10   MOTR theories of ***loss causation*** as alternatives. *E.g.*, ¶¶327-28, 335. Plaintiffs' MTD opposition

11   later made clear that they proceed ***primarily*** on the corrective disclosure theory, devoting a mere

12   sentence to MOTR, to be relied on in the "[*a*]*lternative*[]," if the Court rejected Plaintiffs' main

13   theory. ECF 71 at 24-25. This Court upheld Plaintiffs' loss causation allegations under the corrective

14   disclosure theory, not addressing MOTR. MTD Order at 37-38. Thus, Plaintiffs need not proceed on

15   a MOTR theory, rendering Defendants' few cases inapposite. Opp. 13;[2] *see Baker v. SeaWorld Ent.,*

16   *Inc.*, 2017 WL 5885542, at *14 (S.D. Cal. Nov. 29, 2017) (rejecting same attack, as "[p]laintiffs do

17   not advance a [MOTR] theory of damages," but "assert [] '[OOP]' damages"). Defendants also

18   mischaracterize Plaintiffs' fraud theory in trying to shoehorn this into a MOTR case about ***future risk***

19   that was "impossible to predict" given pandemic "uncertainty." Opp. 12. This Court, however, already

20   held that the AC pled falsity based on Defendants' omission of ***facts "already"*** *existing* at that time,

21   not future risks. MTD Order at 26-27, 29; *see* PX E at 114 (AC alleges that "***existing*** facts and trends"

22   "***not just risks***" "made [] statements misleading"); CRR ¶¶22, 39. And this Court found that many

23   statements were not forward-looking "as they are about ***current or past facts***." MTD Order at 20-23.

24   Second, Defendants' argument misconstrues the law. As explained by Judge Alsup in

25   rejecting this exact argument (based on *Amyris*), in another case where Coffman proposed the same

26   OOP method, MOTR "is not a theory of ***liability***," but a "form of ***loss causation***," to be "prove[n] at

---

27   [2] *Mullerrig v. Amyris, Inc.*, 340 F.R.D. 575, 590-91 (N.D. Cal. 2021), Defendants' main case,
28   "reject[ed] [] attempt to cast plaintiffs' case as based ***solely*** on a [MOTR] theory" as "plaintiffs [] rely
     on an [OOP] damages method[]" for their "corrective disclosure theory"—***certifying*** on that theory.

3

1   the merits stage." *Junge v. Geron Corp.*, 2022 WL 1002446, at *8 (N.D. Cal. Apr. 2, 2022). Thus,

2   "[t]he possible existence of such a theory does not contravene *Comcast* or defeat predominance." *Id*.

3   Defendants' attempt to cast *Junge* as an "'outlier'" (Opp. at 14-15, n.8) ignores that the great weight

4   of authority supports Judge Alsup's analysis. *Junge*, 2022 WL 1002446, at *7–8 ("***Many other***

5   ***district court decisions*** [] have disagreed with [*Amyris'*] conclusion."). Indeed, other courts in this

6   Circuit have recently rejected this exact MOTR *Comcast* argument, citing *Junge*. *In re Fibrogen Sec.*

7   *Litig.*, 2024 WL 1064665, at *16 (N.D. Cal. Mar. 11, 2024) ("Judge Alsup recently agreed" that same

8   MOTR attack on Coffman's OOP method was "a premature loss causation argument" and does not

9   "contravene *Comcast*") (Chen, J.); *Acadia*, 2024 WL 1060079, at *15 ("To the extent [p]laintiffs rely

10  on a [MOTR] theory, that does not preclude class certification under *Comcast*."); *see also Sheet Metal*

11  *Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, 2023 WL 3569981, at *8 (N.D. Cal. May

12  19, 2023) (Seeborg, J.) (rejecting *Comcast* MOTR attack that Coffman had "not offered a way to

13  model the degree to which [d]efendants understated the risk"). Thus, Defendants' claim that "[c]ourts

14  ***routinely*** deny class certification" based on *Comcast*, including due to MOTR (Opp. 9), is wrong.[3]

15      Defendants' reliance on *BP* (Opp. 13-14) is misplaced. *In re BP p.l.c. Sec. Litig.*, 2014 WL

16  2112823, at *10 (S.D. Tex. May 20, 2014). In *BP*, plaintiffs sought to certify two classes: (1) a pre-

17  spill class under a MOTR theory that "***expressly eschew[ed]" traditional OOP damages and instead***

18  ***sought "non-traditional" "consequential damages***"; and (2) a post-spill class under a corrective

19  disclosure theory seeking OOP damages using the same event study method proposed here. *Id.* at 4,

20  11. *BP* refused to certify the pre-spill class, finding consequential damages "antithetical to the fraud-

21  on-the-market theory," as this required "an ***individualized*** inquiry into each investor's subjective

22  motivations." *Id*. at *11-12. But *BP* ***certified*** the post-spill class, as OOP damages are "consonant

23  with the fraud-on-the-market theory." *Id.* at *12-14 & *12 n.14; *Ludlow v. BP, p.l.c.*, 800 F.3d 674,

24  690 (5th Cir. 2015) (affirming both rulings). Unlike *BP*, Plaintiffs here seek only OOP damages under

25  the *Basic* theory of reliance. COR ¶¶82-83; CRR ¶¶9, 21-22; *Junge*, 2022 WL 1002446, at *8-9

26

27  ---
    [3] *Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*, 2023 WL 2592134, at *25 (M.D. Tenn. Feb. 24, 2023) is
    inapposite as that court had upheld loss causation at the motion to dismiss stage for one claim based
28  only on MOTR, forcing plaintiffs to "pursue[] [that] [c]laim using [MOTR]" at class certification. *Id.*
    at *21. And *AAC* certified the class for other claims pled under corrective disclosures. *Id.* at *25-26.

4

LEAD PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO CERTIFY CLASS, APPOINT CLASS
REPRESENTATIVES, AND APPOINT CLASS COUNSEL [CA NO. 3:22-CV-00824-WHO]

("comparison [to *BP*] does not persuade," as here "[P]laintiffs do not seek consequential damages").

Even if Plaintiffs were proceeding under MOTR, the OOP method can calculate damages from MOTR on a Class-wide basis.[4] *See Bayer*, 2023 WL 3569981, at *8 ("courts have routinely found the [OOP] model flexible enough to accommodate such complicating factors"); *Cosby v. KPMG, LLP*, 2020 WL 3548379, at *28 (E.D. Tenn. June 29, 2020) (certifying class in MOTR case where Coffman proposed OOP damages method); *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 105-06 (S.D.N.Y. 2016) (same). The CRR confirms that the OOP event study method can account for Dr. Grenadier's speculative concerns, which relate to quantifying the inputs (*i.e.*, inflation) into the OOP formula through a loss causation analysis, which is premature at this stage. CRR ¶¶13-30.

As to Defendants' claim (Opp. 15) that, like in *BP*, "an event study would overstate damages" here because it did not "account[] for the mismatch between back-end price drop and damages flowing from [MOTR]," this is a premature "loss causation . . . merits" argument, and at this stage Plaintiffs need not provide such a detailed "damages plan . . . spell[ing] out precisely how it would account for confounding variables." *Junge*, 2022 WL 1002446, at *8; *see* CRR ¶¶14-30. Defendants speculate there is "significant doubt on whether it can be done." Opp. 15 (citing nothing). But Dr. Grenadier testified that he is "***absolutely not . . . saying it's impossible***" to calculate class-wide damages here given the issues he raised—only that it's "it's not simple, but I presume ***it's possible***." PX B at 198-99.[5] "[T]he fact that calculating damages is a complex undertaking does not undermine the use of the [OOP] model, nor does it militate against certifying the class." *Bayer*, 2023 WL 3569981, at *8.

## C. Defendants' Other Speculative *Comcast* Challenges Are Similarly Premature

Defendants' other *Comcast* challenges (Opp. 15-19) are similarly speculative, premature loss

---

[4] *Junge,* 2022 WL 1002446, at *6-7 ("[p]laintiffs have neither confirmed nor denied that they will use [MOTR] as a [damages] basis"—but they need not "commit" to a loss causation theory at this stage). Thus, Defendants' critique that Coffman "professed not to know" if Plaintiffs proceed on MOTR (Opp. 14) fails. Coffman stated that "regardless of whether it's [MOTR] or just []corrective disclosures… ***what they're pursuing is the [OOP] methodology for damages***," and "***there's not a meaningful economic distinction as long as that's the case***." PX E at 104-105, 112-16.

[5] Though Dr. Grenadier disputes the workability of an event study here, the GRR admits that "***it is possible*** to use" them "in certain situations"—*i.e.*, when there is a "match" between the disclosures and misstatements. GRR ¶38; PX B at 198-203 ("***event studies certainly could work on a class-wide basis, in general***"). *See infra* at 7. And Coffman makes clear that the event study is simply a "***starting point***" of his proposed damages analysis, which is to come. COR ¶85; CRR ¶¶24-29, n.45.

1    causation arguments. Even if considered, none raises individualized issues. First, Defendants'

2    insistence that Plaintiffs commit to a specific method for calculating stock price inflation—the "input"

3    into the OOP formula, which they dub "[r]equisite [d]etails" (Opp. 15-17)—ignores post-*Comcast*

4    securities decisions making clear this is a loss causation analysis not required at this stage. *E.g.*, *SEB*

5    *Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 288 (N.D. Cal. 2020) ("***Calculating the actual***

6    ***inputs into the [OOP] method*** . . . requires an analysis of ***loss causation***. For present purposes, one

7    need only realize that the inflation-ribbon inputs will be common and applied classwide."); *Police*

8    *Ret. Sys. of St. Louis v. Granite Constr. Inc.*, 2021 WL 229310, at *7 (N.D. Cal. Jan. 21, 2021) (same);

9    *In re Acuity Brands, Inc. Sec. Litig.*, 2020 WL 5088092, at *10 (N.D. Ga. Aug. 25, 2020) (same).[6]

10    Indeed, as Coffman explains, at the appropriate stage, he will consider the results of the ultimate loss

11    causation analysis that will be performed after merits discovery to determine the amount of stock

12    price inflation on a particular day over the entirety of the Class Period. CRR ¶¶12, 14-30. And any

13    such issues with calculating inflation are common to the Class, as Defendants' expert admitted.[7]

14    *Bayer*, 2023 WL 3569981, at *8 (despite such "complicating factors," "damages[] would be subject

15    to classwide proof"). Dr. Grenadier also admitted that he was not opining that it would be

16    "***impossible***" to measure inflation in this case. PX B at 182-83.

17         Further, Defendants' claim that Plaintiffs' damages model fails to account for time-varying

18    inflation because the "level of risk" and "Company knowledge" may have "evolved over time" (Opp.

19    12-13) has been repeatedly rejected. "*Comcast* does not require [p]laintiffs to account for variations

20    in inflation throughout the class period at the class certification stage." *Pirnik v. Fiat Chrysler Autos.,*

21    *N.V.*, 327 F.R.D. 38, 47 (S.D.N.Y. 2018) (citing *Waggoner v. Barclays PLC*, 875 F.3d 79, 106 (2d

22    Cir. 2017)). Such arguments are premature loss causation challenges and, again, raise only ***class-wide***

23

---

24    [6] In contrast, Defendants cite not one case in asserting that this is a "misreading" of *Halliburton I*.
      Opp. 17. And their few cited cases requiring more details are inapposite and outliers. Opp. 9-10 (citing
25    *Loritz v. Exide Techs.*, 2015 WL 6790247, at *22 (C.D. Cal. July 21, 2015) (plaintiffs did not "set
      forth ***any*** model of damages"); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *10-
26    15 (N.D. Cal. Dec. 15, 2014) (not a securities case)). And, "the judge in *Loritz* . . . distinguished *Loritz*
      in a later case where he granted class certification given damages-related expert disclosures similar"
27    to Coffman's here. *Oracle*, 2022 WL 1459567, at *10; *see also Junge*, 2022 WL 1002446, at *7.

28    [7] PX B at 298-301 (admitting that such a time-varying inflation issue "***would . . . apply to all class***
      ***members***" and his critiques of calculating inflation "***would apply to the whole class***").

LEAD PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO CERTIFY CLASS, APPOINT CLASS
REPRESENTATIVES, AND APPOINT CLASS COUNSEL [CA NO. 3:22-CV-00824-WHO]

1   issues. *In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 2039171, at *15 n.11 (C.D. Cal. May 11,

2   2017) ("Even if . . . the inflation ribbon changed over time, damages would still be subject to class-

3   wide proof."). Coffman explains that he can use standard techniques to account for any potential

4   variations in the inflation with the OOP method as inflation need not be constant. COR ¶¶84-86; CRR

5   ¶¶12, 31-35, 40-44; *Acadia*, 2024 WL 1060079, at *16 (rejecting time-varying inflation argument).

6          Finally, Defendants argue that Plaintiffs' method is flawed because the corrective disclosures

7   do not "match"[8] the misstatements. Opp. 18-19. But courts have repeatedly rejected this *Comcast*

8   "mismatch" argument at class certification, including where previously offered by Dr. Grenadier.

9   *Apple*, 2022 WL 354785, at *12. Such **attack[s on] the 'fit' between an alleged corrective disclosure**

10  **and a prior alleged fraudulent statement .... [are] nothing more than [ ] attack[s] on loss causation**,

11  which plaintiff need not show as a condition of class certification." *Id.*; *Junge*, 2022 WL 1002446, at

12  *8 (rejecting this exact MOTR "mismatch" argument). And this Court has already rejected such an

13  argument here at the MTD stage. MTD Order at 37-38 (finding requisite "causal connection," despite

14  Defendants' arguments to the contrary); *see Malriat*, 2022 WL 17974629, at *14 (rejecting

15  "essentially the same" loss causation "arguments about corrective disclosures" already rejected at the

16  motion to dismiss). Indeed, "Dr. Grenadier is not disputing that there is a logical economic causal

17  link" between the information allegedly concealed and its ultimate impact on DocuSign's stock price

18  upon the corrective disclosures. CRR ¶¶16-17. Coffman also opines that there is a "clear logical,

19  economic, and causal link" here, supported by his analysis of analyst and news reports after the

20  corrective disclosures (CRR ¶¶45-62)—evidence that Dr. Grenadier ignored. *See infra* at 15.

21  **III.   PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(A)**

22         **A.    Plaintiffs Have Established Typicality**

23         Plaintiffs' claims are typical, as "[l]ike [in] other securities class actions, . . . the class members

24  writ large have been victim[s] of the same material misstatements." *Bayer*, 2023 WL 3569981, at *7.

---

[8] Dr. Grenadier struggled to explain what he meant by a "match," saying it was a "close[] connect[ion]" but need not be "perfect" or "exact same words," but more than a "subject matter" match. PX B at 201-10. "To be corrective, a disclosure **need not precisely mirror** the earlier representation." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020); *see* CRR ¶17.

7

### 1.    Plaintiffs Are Not Subject to the Unique Defense of Non-Reliance

Defendants selectively quote Plaintiffs' and Peregrine's testimony to argue that it contradicts the AC and that Plaintiffs thus "did not rely on the alleged fraud." Opp. 19-20. But the Ninth Circuit has "emphasize[d] that the defense of non-reliance is not a basis for denial of class certification" usually—it is permitted only where plaintiff's "unique situation" shows that his "reliance on the integrity of the market would be subject to serious dispute." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508-09 (9th Cir. 1992); *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 577 (N.D. Cal. 2009) ("investor is entitled to [*Basic*] presumption that it relied on any material misrepresentations," which "can be rebutted if [] defendant shows … that the plaintiff did not rely on the integrity of the market").

Defendants' showing falls far short here. First, Defendants ignore that testimony here confirms that both DIL and PERSI's IMs relied on the market price and only on public information in transacting in DocuSign. PX F at 52-54, 97-98, 163-65, 226-28; PX I at 28-32, 77-78; PX J at 287-89. Thus, the *Basic* presumption of reliance applies (as Plaintiffs have established market efficiency, which Defendants do not contest). *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 252-53 (N.D. Cal. 2013) ("[c]ourts have routinely rejected [this] argument" where plaintiffs or IMs "rely on publicly available data" and "[d]efendant has not . . . rebutt[ed] the presumption that [a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price"); *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *6 (N.D. Cal. Dec. 22, 2016) (same as "record [] does not suggest [p]laintiffs possessed material non-public information").[9]

Second, Defendants grossly mischaracterize DIL, PERSI, and Peregrine's testimony to assert that they "admitted that . . . ***DocuSign disclosed the very issue that the AC claims defendants lied about—****i.e., that **its growth rate was expected to decline** once the pandemic ended." Opp. 19 (emphasis in original). They admitted no such thing. Instead, when shown DocuSign's generic risk factors in SEC filings—*e.g.*, "that growth we have experienced **may** not continue in the future" and that demand "**could** have fluctuations"—the deponents simply agreed that, *e.g.*, these "appear[] to be [] standard risk disclosure[s]." PX H at 163-75, 233-34 (Defendants "**weren't forthright about the**

---

[9] Defendants' cases (Opp. 19) are inapposite. *Hanon*, 976 F.2d at 508 (plaintiff atypical due to highly unique trading); *Amyris*, 340 F.R.D. at 582 (same where plaintiff posted online about investments hundreds of times, ***and admitted that "the central issue" there "was disclosed by the company"***).

1   *uncertainty of the []sustained growth*" as these risk factors "didn't include . . . what they were seeing

2   internally from their own performance metrics . . . [*e.g.,*] comments from their customer base")"; PX

3   F at 190-94 (these disclosures state only that long-term growth post-COVID "*might* be a risk factor");

4   PX J at 108-24 ("*every company we invest in has this [risk] disclosure*, so there is no surprise here").

5   This Court already rejected this argument: such risk "disclosures were inadequate" as they "did not

6   alert investors that some of those risks may have *already* come to fruition." MTD Order at 26-27.[10]

7        DIL and Peregrine also did not "acknowledge[] that they expected a 'slowdown' or 'flattening

8   of growth'" post-pandemic. Opp. 19-20. DIL testified that the cited excerpt from the DIL notes (DXs

9   E-F) reflected what that employee "took out of the [DocuSign earnings] call" on December 2, 2021,

10  the first corrective disclosure, "based on the information he received on the earnings call" from

11  DocuSign—not DIL's own expectations *before the call*. DX C at 256-65.[11] The cited Peregrine

12  document also states that ████████████████████████████████████████████████████████

13  ████████████████████████████████████████ (DX L at 1).  And Peregrine testimony and

14  documents  show  that  ████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████████████

16  PX J at 244, 261-62, 267; PX K at 1.  Further, Peregrine's subjective view that Defendants had not

17  "lied" to investors (Opp. 20) is irrelevant, and this is a class-wide issue to be decided by the trier of

18  fact. *Intuitive*, 2016 WL 7425926, at *7 ("statements indicating possible differences of opinion

19  between [p]laintiffs and two of their investment advisors does not suggest that [p]laintiffs have a

20  conflict of interest with" the class); *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *6

21  (D. Conn. Apr. 13, 2023) ("defendants have not shown how PERSI's [IM]'s views are material to the

22  determination of whether PERSI acted in reliance on the market price"); *see also* PX J at 291-93

23  (Peregrine had not done any independent investigation into such fraud claims, and, in investing in

24

25  ────────────────────
    [10] Both Plaintiffs also testified that Defendants failed to disclose red flags indicating that pandemic-
26  driven demand was unsustainable. *E.g.*, PX H at 123-25, 141-46, 221, 225; PX F at 60, 127-28, 134.

27  [11] Defendants' attempt to dispute this witness's "credib[ility]" (Opp. 20, n.13) is premature at this
    stage and also meritless as such testimony is supported by DIL documents from before this call that
    they ignore. *E.g.*, PXs O-P (9/3/21 earnings call notes discussing ████████████████████
28  ████████████████████████████████████████████████████████████████████████████ ███

1    DocuSign, assumed that Defendants were being honest in public disclosures).[12]

2    Finally, Plaintiffs **directly relied** on Defendants' misstatements in investing in DocuSign. For

3    example, ███████████████████████████████████████████████████████

4    ████████████████████████████████████████████ PX J at 40-41,

5    76, 236-37; PX M at 35. Notably, █████████████████████████████

6    ████████████████████████████████████████████████████.[13]

7    DIL testified that it relied on public "statements made by the [C]ompany," *e.g.*, "about billings,

8    revenue, [KPIs], [and] the financials" and its strong "***long-term growth in customer demand and***

9    ***billings***" post-pandemic that led DIL to believe it was a "***good investment***."[14]

10    ## 2.    Plaintiffs' Post-Disclosure Purchases Do Not Make Them Atypical

11    Courts have repeatedly rejected Defendants' attack on Plaintiffs' typicality because they

12    purchased some DocuSign stock after the corrective disclosures (Opp. 20). *Connectics*, 257 F.R.D. at

13    577 (so holding given the "***weight of authority***,"); *Symantec*, 335 F.R.D. at 283 ("plaintiff is not likely

14    unique in purchasing shares following the disclosures"); *In re Countrywide Fin. Corp. Sec. Litig.*, 273

15    F.R.D. 586, 602-03 (C.D. Cal. 2009) ("join[ing] the ***great weight of authority***"). What matters is that

16    DIL and PERSI's IMs all relied on the market price of DocuSign's stock when making these

17    purchases. *See supra* at 8; *Connectics*, 257 F.R.D. at 577 (rejecting this argument where defendants

18    have not shown "that lead plaintiff was not relying on the integrity of the market"). This is true even

19    _____

20    [12] Defendants also misrepresent that Peregrine █████████████████████
     ███████████████ (Opp. 20, n.14). Peregrine in fact testified that it

21    ███████████████████████████████████████████ PX L; PX J at 203, 265-66, 273, 286-87.

22    [13] PX J at 212-14; *e.g.*, PX N at -105 ███████████████ *id.* at -102
     ████████████████████ *id.* at -094.

23    [14] PX F at 51-54; 160-63, 169, 209-12 (DIL researched DocuSign in early 2020, attending conference

24    where Springer spoke, and began investing in May 2020); 59 (DIL PM "***believed in what DocuSign***
     ***said***"), 226-37 (4/14/21 DIL call with DocuSign IR, which confirmed DIL's belief that it was a "good

25    investment," as "PPP Program was not mentioned, which would have been [of] interest[] for [DIL
     PM] because if that [had been] mentioned that it's just for one short-term use, he would have seen

26    this as ***a key risk factor for long-term growth and wouldn't have made such a positive opinion about***
     ***[] investing in DocuSign***"); PXs Q-U █████████████

27    ███████████████████████████ ██PXs V-W█████████████████████ ██PXs

28    X-Y██████     PX Z (DIL trading chart).

10

1    if Plaintiffs made some purchases after moving for lead plaintiff based on the first two **partial**

2    disclosures, and PERSI had only a small purchase after the end of the Class Period (Opp. 20-21). DX

3    J; *Alexion*, 2023 WL 2932485, at *4 (rejecting same argument that plaintiffs bought "after []

4    conclud[ing] that Alexion had committed securities fraud and sought appointment as lead plaintiff").

5    Further, both PERSI and DIL's post-disclosure purchases were **minimal** compared to their overall

6    purchases—**less than 1%** for PERSI and **only 14.7%** for DIL—and the vast majority of their

7    purchases occurred predominantly early in the Class Period, before any corrective disclosures. DX J;

8    PX Z; *see Symantec*, 335 F.R.D. at 283-84 (rejecting same argument as "plaintiff's class-period

9    purchases prior to the [] disclosure far exceed its post-disclosure purchases"); *Alexion*, 2023 WL

10   2932485, at *5 (same where the post-disclosure "purchase accounted for just **over fourteen percent**").

11        PERSI's **three small** post-disclosure purchases were all made by Mellon, a "passive" index

12   IM, which "trad[es] to match [a specified stock] index" and thus "[i]f [the stock] was in the index,

13   they would hold it"—including buying more if necessary to replicate the weighting of that stock held

14   by the index. PX H at 50, 264; PX I at 75-77. Such "index purchases pose no typicality concern."

15   *Countrywide*, 273 F.R.D. at 602; *Connetics*, 257 F.R.D. 578 (same). DIL also made a few small

16   purchases after the first disclosure and only one after the second disclosure. PX Z. Such purchases

17   were made primarily to rebalance the fund given an influx of cash, through which the fund also bought

18   other securities that reduced the overall ratio of its DocuSign investment. PX F at 272-75.

19                    **3.    DIL Is Not Subject to Any Other Unique Defenses**

20        Defendants' speculation about DIL's standing also fails. First, this Court has already rejected

21   such a DIL standing challenge—based on, *e.g.*, a sworn declaration from DIL (ECF 14-4), and thus

22   not merely its "say-so" (Opp. 21). ECF 42 at 8 (DIL has standing under *Huff* as "[t]here is a

23   sufficiently close relationship between DIL and the funds at issue, . . . DIL manages the funds and

24   has the exclusive right and obligation to bring claims on their behalf"). Second, not only have other

25   courts rejected such standing arguments at class certification (*e.g.*, *Alexion*, 2023 WL 2932485, at

26   *7), but this argument has already been rejected specifically as to **DIL**. *In re Vivendi Universal, S.A.*

27   *Sec. Litig.*, 605 F. Supp. 2d. 570, 579-80 (S.D.N.Y. 2009). Third, DIL has provided extensive

28   discovery on this topic (*e.g.*, PX AA at 46-51), substantiating its standing. Indeed, Defendants do not

1  seriously contest DIL's standing, having raised no new issues, let alone proffered any expert

2  testimony or other evidence (not bothering to even ask any standing-related questions at DIL's

3  deposition). Fourth, although expert testimony is not required (Opp. 21), DIL submits a declaration

4  by a Luxembourg lawyer. PX BB ¶¶19-20, 22; *Vivendi*, 605 F. Supp. 2d at 579.[15] As DIL "is the only

5  party who can bring suit for the losses sustained in the [DIL Funds]," it has standing under *Huff. In*

6  *re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 444 (S.D.N.Y. 2013) (certifying class).[16]

7        Finally, DIL will not be "preoccupied" because it seeks to recover on behalf of multiple Funds

8  (Opp. 21). Collectively, the six DIL Funds suffered huge losses, over ***$38 million***, even when

9  considering the limited gains by ***only one*** Fund, such that the interests of DIL—the proposed Class

10  representative—are clearly aligned with that of the Class. PX GG; PX F at 278.

### B.    Plaintiffs Are Adequate Class Representatives

12        "The threshold of knowledge required to qualify a class representative is ***low***; a party must be

13  familiar with the basic elements of her claim [ ] and will be deemed inadequate only if she is

14  '***startlingly unfamiliar***' with the case." *Intuitive*, 2016 WL 7425926, at *7. This is easily met here.

15        **DIL**: Defendants' examples of purportedly insufficient testimony (Opp. 22) mischaracterize

16  the testimony. 30(b)(6) depositions "are not intended to be memory tests in which a deponent is asked

17  to recall every single detail related to a particular topic." *Gebremedhin v. Am. Fam. Mut. Ins. Co.*,

18  2015 WL 4272716, at *8 n.6. (D. Colo. July 15, 2015). And "[i]f there are relevant documents, the

19  court expects that [the questioning party] will show such documents to the deponent." *Id*. DIL testified

20  at length about the DIL Funds' investment policies (PX F at 73-80, 84-85), investment process and

21  information relied upon in trading in DocuSign stock (*id*. at 51-53), the circumstances and contents

22  of relevant research (*id*. at 57-63, 169-70, 204-06, 209-12, 214-16, 227-30), and the reasons for DIL's

23  DocuSign trades (*e.g., id*. at 163-65). *Cf*. Opp. 22. Further, when asked to review documents related

24  to these topics on which DIL was purportedly "unable or unwilling" to testify about, Defendants'

---

25  [15] Nor did Plaintiffs waive this by not raising it in the Motion. *Turocy v. El Pollo Loco Holdings, Inc.*,
26  2018 WL 3343493, at *12 (C.D. Cal. July 3, 2018) ("plaintiff moving to certify a class should not be expected—in the opening brief—to anticipate and rebut all possible affirmative defense arguments").

27  [16] Defendants' case is inapposite as plaintiff's "claims were invalidly assigned to it." *In re LIBOR-*
28  *Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 535-36 (S.D.N.Y. 2018). And that DIL has delegated class action and IM services to Deka (Opp. 3) is irrelevant. PX BB ¶29; PXs CC-FF.

12

counsel refused. PX F at 80, 229; *see also id.* at 101, 169, 226-27. Defendants' counsel also selectively pointed to one or two lines from lengthy documents and refused to accept testimony regarding other contents. PX F at 218-19. Such deposition strategy does not detract from the fact that DIL's testimony is replete with specific factual detail about the case (*e.g.*, key claims, Defendants, and Class Period), litigation oversight, and trading in DocuSign. *E.g., id.* at 57-60, 115-18, 124-29; *Malriat*, 2022 WL 17974629, at *5 (similar testimony sufficient to "rebut[] the defendants' assertions that the plaintiffs do not understand the case or rely too heavily on lawyers to tell them about it").[17]

**PERSI**: Defendants attack PERSI's inability to testify as to counsel's discovery negotiations about CWs as suggesting inadequate "oversight." Opp. 23. Not so. PERSI testified at length about its oversight at each stage of the case. *E.g.*, PX H at 46-47, 134-36, 150-52. That PERSI was unaware of a single, strategic decision by counsel regarding CWs does not render PERSI inadequate. Indeed, "particularly in a complex case like this securities class action, it is hardly a badge of inadequacy to rely heavily on the expertise of attorneys." *Malriat*, 2022 WL 17974629, at *5.

**Additional Counsel**: Plaintiffs' use of additional counsel neither violates the PSLRA nor renders them inadequate. Opp. 23. *E.g., Hunt v. Bloom Energy Corp.*, 2021 WL 1110260, at *1 (N.D. Cal. Mar. 23, 2021) ("Nor does the PSLRA speak to whether lead counsel may associate additional counsel to assist in the prosecution of a case, subject to the control of lead counsel . . . . the claimed prohibition in the PSLRA on which [Defendants' argument] relies simply does not exist."); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2022 WL 2954937, at *4 (N.D. Cal. July 26, 2022) (same). DIL has a long-standing agreement with DRRT, under which DRRT monitors and advises on potential cases for DIL. PX F at 91-94. PERSI uses Robert Klausner as fiduciary counsel to advise PERSI's board on their roles as fiduciaries, "including reviewing of securities litigation cases," and Jason Risch as their local counsel in Boise, Idaho. PX H at 47-48, 62-67. Further, Labaton's agreement with PERSI ███████ ██████████████████████████████ PX HH at -729. DIL's agreement with DRRT ████████. PX II-JJ at -146. Such additional counsel are ██████████████████████████████████

---

[17] Defendants' issue with DIL's testimony about documents DIL relied on in trading in DocuSign misreads DIL's discovery responses. PX AA at 17-18 (identifying ***examples of the types*** of information DIL considered, not exhaustive list). Defendants' claim that the testimony conflicts with DIL's responses is misplaced. PX F at 53-54, 228 (DIL relied on public information provided by DocuSign).

1    ██████████. PX HH at -729; DX G at -2635; PX F at 91-92, 94-95; PX H at 68, 71-72.[18]

2    ## IV.    CERTIFICATION OF THE ENTIRE CLASS PERIOD IS APPROPRIATE

3        **End Date:** Defendants argue that the Class Period should end "no later than December 2,

4    2021," the first disclosure, because it fully revealed the fraud. Opp. 25. But whether a "disclosure

5    'actually cured a prior misrepresentation' is a sensitive issue to rule on at this early stage. . . because

6    it comes so close to assessing the ultimate merits . . . and courts therefore decline to [do so] ***unless***

7    ***there is 'no substantial doubt*** as to the [disclosure's] curative effect.'" *In re LDK Solar Sec. Litig.*,

8    255 F.R.D. 519, 529 (N.D. Cal. 2009) (citing Defendants' case, *In re Fed. Nat'l Mortg. Ass'n Sec.,*

9    *Derivative & "ERISA" Litig.*, 247 F.R.D. 32, 39 (D.D.C. 2008) ("*Fannie*")).[19]

10        Here, the first disclosure "only ***partially*** revealed" the fraud, or there is at least "***factual***

11    ***uncertainty***" (*LDK*, 255 F.R.D. at 528-29) given Defendants' false reassurances on that first

12    disclosure, and that the later disclosures revealed new information (*e.g.*, further billings growth misses

13    in two later quarters and more details as to their causes) about the extent of DocuSign's demand

14    problems post-pandemic. AC ¶¶304, 312-324. This Court also rejected Defendants' similar argument

15    in the MTD (ECF 68 at 24; ECF 75 at 15), upholding the last two disclosures. MTD Order at 38;

16    *LDK*, 255 F.R.D. at 529 (not cutting class period as first disclosure "couched the news in a mix of

17    positive and negative statements" and "the later disclosure went into far greater detail").[20]

18        Plaintiffs' expert also found that the large stock drops upon the last two disclosures (over 20%,

19    and 24%) are statistically significant. COR, Ex. 7 at 8-9; CRR ¶¶55, 61. *In re Juniper Networks, Inc.*

20

21    _____

    [18] *In re IMAX Sec. Litig.* is inapposite. 272 F.R.D. 138, 156-57 (S.D.N.Y. 2010) (finding conflict with

22    the class based on "appearance of impropriety" where plaintiff and additional counsel were neighbors
    and friends for 25 years, and plaintiff received yearly payments from its additional counsel).

23    [19] Defendants' cases agree with this standard, and are distinguishable as there was "no substantial
    doubt" that the first disclosure fully cured the fraud. *Fannie*, 247 F.R.D. at 39; *Hayes v. MagnaChip*

24    *Semiconductor Corp.*, 2016 WL 7406418, at *8 (N.D. Cal. Dec. 22, 2016); *W. Va. Pipe Trades Health*
    *& Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 294 n.6 & 295 (D. Minn. 2018).

25    [20] While claiming that such a class period challenge is proper at class certification (Opp. 24, citing
    *Medtronic*), Defendants ignore that it is an attempt to "rebut the *Basic* presumption . . . by showing a

26    lack of price impact." 325 F.R.D. at 294. Defendants bear "the burden of ***persuasion to prove*** a lack
    of price impact by a ***preponderance of the evidence***." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret.*

27    *Sys.*, 594 U.S. 113, 117 (2021). Defendants have ***not*** made such a price impact challenge here. Even
    if they had, they have not come close to meeting their burden here. *E.g.*, PX B at 87-89, 117-18

28    (Grenadier was not asked to and did not opine on price impact, the Class Period, or any other issues
    besides damages method, and did not consider any analyst reports other than for "background").

14

1   *Sec. Litig.*, 264 F.R.D. 584, 593 (N.D. Cal. 2009) (such stock price drop is "evidence"). Defendants

2   do not contest these findings. PX B at 128 (Dr. Grenadier admitting statistical significance). Further,

3   analyst reports—which Defendants ignore[21]—confirm that the last two disclosures revealed the

4   extent of the fraud—*i.e.*, that the post-pandemic demand problems were not just a temporary, minor

5   blip.[22] Tellingly, Defendants have not asked their expert to opine on this issue (PX B at 108-10, 150-

6   51), which he has done in prior cases, to no avail. *In re Mills Corp. Sec. Lit.*, 257 F.R.D. 101, 105–07

7   (E.D. Va. 2009) (rejecting "challenge [to] the end date of the class period" that relied on Grenadier's

8   opinion); *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 135-138 (S.D.N.Y. 2019) (same).[23]

9         **Start Date:** Defendants' attempt to start the Class Period later, on 3/11/21 (Opp. 24) also fails.

10  Their contention—based on only a few cherry-picked allegations in the AC and Plaintiffs' testimony

11  that they try to twist into key "admissions"—is an improper attempt to reargue merits falsity and

12  scienter issues. This Court rejected such arguments at the MTD, finding that Plaintiffs had "plausibly

13  show[n]" that "***from the start of the class period*** . . . DocuSign was aware that demand for its products

14  'would not last, based on multiple internal warnings signs.'" MTD Order at 26-27; *id*. at 29; 33-34.[24]

15  Further, Defendants' arguments raise class-wide, fact-intensive issues that will be properly addressed

16  at a later stage. *Barrick Gold*, 314 F.R.D. at 107 (rejecting attempt to start class period later as this is

17  a "merits [] question of fact for the jury"); *In re SandRidge Energy, Inc. Sec. Litig.*, 2019 WL 4752268,

18  at *8 (W.D. Okla. Sept. 30, 2019) (same, refusing to "revisit [] Rule 12(b)(6) and 9(b) rulings").

19  **V.    CONCLUSION**

20         For the reasons above, Plaintiffs request that the Court grant the relief requested in the Motion.

21

22  ---
    [21] Dr. Grenadier has opined in prior cases that post-corrective disclosure analyst reports are

23  "***important***" evidence on which he placed "***particular emphasis***." PX C at 8-9; PX B at 94-108.

    [22] *E.g.*, ¶351 (3/10/22: "DocuSign's Q4 underscored that the growth scare of Q3 was ***not a one***

24  ***quarter event***"); ¶358 (6/10/22: "The demise of DOCU's growth story continues as the WFH poster
    child faces new and ongoing complications with the selling environment following COVID[]…").

25  [23] There is nothing improper about Plaintiffs expanding the class period to add these two disclosures
    (Opp. 25) that occurred ***after*** they filed their lead plaintiff motion—as is routinely done after lead

26  plaintiff appointment based on a new investigation, especially where there are further disclosures. *See*
    *Hardy v. MabVax Therapeutics Holdings*, 2018 WL 4252345, at *5 (S.D. Cal. Sept. 6, 2018).

27  [24] Defendants' cases are inapposite. *Luna*, 2017 WL 4865559, at *7 ("***scant*** allegations"); *In re Veeco*
    *Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 235-36, 241 (S.D.N.Y. 2006) (in denying MTD, finding

28  statements at class period start "not actionable," and thus cutting the class period in certifying class).

1    DATED: April 17, 2024                    Respectfully submitted,

2

3                                             **LABATON SUCHAROW LLP**
                                              CAROL C. VILLEGAS (admitted *pro hac vice*)
                                              IRINA VASILCHENKO (admitted *pro hac vice*)
4                                             LISA STREJLAU (admitted *pro hac vice*)
                                              MATTHEW J. GRIER (admitted *pro hac vice*)
5                                             DAVID SALDAMANDO (admitted *pro hac vice*)

6
                                              */s/ Irina Vasilchenko*
7                                             IRINA VASILCHENKO
                                              140 Broadway
8                                             New York, NY 10005
                                              Tel: (212) 907-0700
9                                             Fax: (212) 818-0477
                                              cvillegas@labaton.com
10                                            ivasilchenko@labaton.com
                                              lstrejlau@labaton.com
11                                            mgrier@labaton.com
                                              dsaldamando@labaton.com
12
                                              *Counsel for Lead Plaintiffs*
13                                            *and Lead Counsel for the Proposed Class*

14                                            **KESSLER TOPAZ MELTZER**
                                              **& CHECK, LLP**
15                                            Jennifer L. Joost (Bar No. 296164)
                                              Stacey M. Kaplan (Bar No. 241989)
16                                            One Sansome Street, Suite 1850
                                              San Francisco, CA 94104
17                                            Tel: (415) 400-3000
                                              Fax: (415) 400-3001
18                                            jjoost@ktmc.com
                                              skaplan@ktmc.com
19
                                              *Liaison Counsel for the Proposed Class*
20
                                              **DRRT**
21                                            Joseph Gulino (admitted *pro hac vice*)
                                              340 West Flagler Street, 2nd Floor
22                                            Miami, Florida 33130
                                              Tel: 1 (305) 760-8030
23                                            Fax: 1 (305) 760-8030
                                              jgulino@drrtcom
24
25                                            *Additional Counsel for Lead Plaintiff DIL*

26                                            **KLAUSNER KAUFMAN JENSEN & LEVINSON**
                                              Robert D. Klausner (admitted *pro hac vice*)
27                                            7080 Northwest 4th St.
                                              Plantation, FL 33317
28                                            Tel: (954) 916-1202

                                                  16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fax: (954) 916-1232
bob@robertklausner.com

**RISCH PISCA, PLLC**
Jason S. Risch (admitted *pro hac vice*)
407 W. Jefferson St.
Boise, ID 83702
Tel: (208) 345 9929
jrisch@rischpisca.com

*Additional Counsel for Lead Plaintiff PERSI*

17